IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
UNITED STATES            )
                         )
          Plaintiff,     )
                         )          1:07cr404 (JCC)
          v.             )
                         )
PAUL GUILD,              )
                         )
          Defendant.     )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant's Motion to Dismiss the Indictment for Improper Venue and/or to Transfer Venue.  For the following reasons, these Motions will be denied.

### I. Background

This case arises out of alleged misconduct by Paul Guild ("Defendant") in Kiev, Ukraine, where he was performing a tour of duty with USAID.  On August 5, 2007, Department of State Regional Security Officers met with Defendant and questioned him in the office of his superior, the Director of the USAID Mission in Kiev, Ukraine, regarding allegations of sexual misconduct. Pursuant to regulation, Guild was ordered out of the country pursuant to an order of "involuntary curtailment," immediately terminating his tour of duty and issuing travel orders for the following day.  The State Department Diplomatic Security Service ("DSS") arranged for his travel back to the United States on August 6, 2007.  Although Defendant was accompanied by an agent,

the agent did not sit in the same section of the plane as Defendant, and he was not physically restrained in any way.  The flight from Kiev landed at JFK Airport in New York, at which point arrangements were made for a police car to take them to LaGuardia Airport in order to avoid a long layover by catching an earlier connecting flight to Reagan National Airport, in the Eastern District of Virginia.  Defendant was met at the airport in Virginia by DSS agents who gave him information regarding the housing that had been arranged for him and meetings with the State Department that he was expected to attend.  After arriving in Virginia, Defendant stayed at a Residence Inn at Government expense until August 8, 2007, when he took up residence at a private home.  By August 17, 2007, Defendant had obtained counsel.

Defendant made a request to USAID that he be allowed to take a trip to Oregon, a request that was relayed to DSS Agent Allen.  The Agent called Defendant regarding that request on August 28, 2007, and asked that Defendant surrender his passports.  The two arranged for Defendant to bring the passports to the agent's office in Rosslyn, Virginia around 9:00 AM on August 29, 2007, after Defendant dropped off his daughter at Reagan National Airport.  Neither a criminal complaint nor an indictment had issued against Defendant at the time of the call. Agent Allen was not aware and Defendant did not mention during

the phone call that he was represented by counsel, although his attorney called Agent Allen later that day.  On August 29, 2007, Defendant was arrested by Agent Allen and another agent at Reagan National Airport in the Eastern District of Virginia, before a criminal complaint or an indictment were issued against Defendant.

On October 23, 2007, Defendant filed a Motion to Dismiss the Indictment for Improper Venue and/or Transfer Venue. These Motions are currently before the Court.

## II. Standard of Review

The government bears the burden of establishing, beyond a preponderance of the evidence, the propriety of venue. *See United States v. Robinson*, 275 F.3d 371, 378 (4th Cir. 2001). Upon a defendant's motion under Federal Rule of Criminal Procedure 21(b), for transfer of venue, the trial court retains discretion to determine when a transfer is appropriate.  *United States v. Smallwood*, 293 F. Supp. 2d 631, 640 (E.D. Va. 2003).

## III. Analysis

(A) <u>Dismissal of Indictment</u>

(1) <u>Improper Venue</u>

Defendant first argues that the indictment against him should be dismissed for improper venue.  Under 18 U.S.C. § 3238, when the offending conduct occurs "out of the jurisdiction of any particular State or district," venue "shall be in the district in

3

which the offender ... is arrested or is first brought". *Id.*
The Fourth Circuit has deemed the intent of the statute "settled"
that "'[f]irst brought' within the context of the statute means
first brought in custody with liberty restrained." *United States
v. Erdos*, 474 F.2d 157, 161 (4th Cir. 1973) (citing *United States
v. Ross*, 439 F.2d 1355, 1358 (9th Cir. 1971); *United States v.
Provoo*, 215 F.2d 531, 537 (2d Cir. 1954); *Chandler v. United
States*, 171 F.2d 921, 927, 932-33 (1st Cir. 1948); *Kerr v. Shine*,
136 F. 61, 63-65 (9th Cir. 1905)).  The Fourth Circuit's
describes venue as proper if it is "in that district within the
United States where the offender is first restrained of his
liberty in connection with the offense charged." *Erdos*, 474 F.2d
at 160.

Defendant claims that he was taken to the United States
because the Department of Justice wanted to prosecute him for the
activities alleged in Kiev.  He argues that the DSS agents were
acting at the behest of the Department of Justice, and thus that
their conducting the interview in Kiev and accompanying Defendant
on the flights to the United States constituted a restraint of
Defendant's liberty within the meaning of the statute.  Defendant
claims that he was in custody on the flight from the Ukraine
since his itinerary was determined by DSS, he was accompanied by
a DSS agent, and he did not feel free to refuse to go with the
agent.  Defendant argues that he was in custody because the DSS

4

agents had the ability to make arrests and were armed.

The Government counters that Defendant was not detained or in any way in the custody of the government, but that his flight back to the United States was merely the State Department's recall of a diplomat. There had been no complaint or indictment filed against Defendant at the time of his arrival in the United States, an indication that DSS was not acting at the behest of the Department of Justice. In addition, The Government contends that the agent accompanying Defendant, who did not even sit near him on the plane, was for Defendant's safety, and that the ride in the police vehicle between JFK and La Guardia airports was provided as a courtesy to the diplomatic service. Upon arrival in Virginia, Defendant was no longer accompanied by agents but was given a hotel room for the first few days and then he arranged other housing. More than two weeks elapsed between Defendant's arrival in Virginia and his arrest, during which he was not in custody in any manner.

Defendant analogizes his situation with that of the defendant in *United States v. Provoo*, 215 F.3d. 531 (2d Cir. 1954). In that case, the Department of Justice requested that the Army hold Provoo, a military prisoner, in custody after the Army's charges were dropped. The Army brought Provoo from Maryland to turn him over to the custody of the FBI in New York, where he was indicted and convicted of treason. The Second

Circuit found that venue was improper in New York because Provoo had been first held in connection with the treason charges in Maryland, at the request of the Department of Justice.

This Court finds the citation to *Provoo* inapposite. Guild had not been arrested or held as a prisoner on any charges before he flew to the United States and was not placed under arrest during his travels.  Instead, when he arrived in Virginia he was free to leave his hotel and, later, his residence, at will.  Guild's transportation to the United States with the accompaniment of an agent was part of the State Department's recall of a diplomat, not an arrest under the auspices of the Department of Justice.  This case is also unlike another relied upon by Defendant, *Chandler v. United States.* 171 F.2d 921 (1st Cir. 1948).  In that case, Chandler was already in custody when he was brought into the United States.  The First Circuit held that the state where his airplane first landed was the appropriate venue for the trial, since he it was the district to which he was first brought while in custody.  Unlike Chandler, when Defendant landed in New York, he had not been arrested for or indicted on, nor was he in custody for, the charges which are pending before this Court.

The statute at issue states that venue "shall be in the district in which the offender . . . is arrested or is first brought."  18 U.S.C. § 3238.  There is no dispute that Defendant

6

was arrested in the Eastern District of Virginia, and the Court does not find Defendant's arguments that he was, or thought he was, in custody in New York to be persuasive.    Therefore, the Court finds that the Eastern District of Virginia is the proper venue.

### (2) Sixth Amendment Right to Counsel

Defendant's second argument that the indictment should be dismissed rests on a claim that his Sixth Amendment right to counsel was violated.   The crux of Defendant's argument is that Agent Allen knew or should have known that Guild was represented by counsel, and that any conversation between Allen and Defendant once Defendant had retained counsel was therefore improper.

The Sixth Amendment "right to the assistance of counsel . . . is indispensable to the fair administration of our adversarial system of criminal justice" and "safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding." *Maine v. Moulton*, 474 U.S. 159, 168-69 (1985).   The right "means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him." *Id.* at 170.

The Supreme Court specifically addressed the question of the right's attachment in relation to time of retention of counsel. *Moran v. Burbine*, 475 U.S. 412, 430 (1986).   According to the Court, "it makes little sense to say that the Sixth

7

Amendment right to counsel attaches at different times depending on the fortuity" of when someone retains counsel.  The Court derided the same argument the Defendant makes here, stating that

> the suggestion that the existence of an attorney-client relationship itself triggers the protections of the Sixth Amendment misconceives the underlying purposes of the right to counsel.  The Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor.

*Id*.  Instead, the right "becomes applicable only when the government's role shifts from investigation to accusation . . . after the initiation of formal charges."  *Id*. at 430-31.  *See also Moran* 475 U.S. at 431 ("the Sixth Amendment right to counsel does not attach until after the initiation of formal charges").

Defendant argues that he was in custody from the time of the questioning in Ukraine on August 5, 2007 until he left the Residence Inn on August 8.  However, no charges had been filed, and no criminal complaint or indictment had issued against Defendant.  All of the conversations condemned by Defendant as violating his Sixth Amendment right to counsel occurred before his arrest or indictment and thus before the right had attached.

Even if Defendant's Sixth Amendment rights were somehow violated, the Supreme Court has held that "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate."  *Morrison*, 449 U.S. at 365.

8

Defendant has not demonstrated threat of prejudice in this case. For these reasons, this Court finds that venue is proper, and will deny Defendant's Motion to dismiss the indictment.

    (B) <u>Transfer of Venue</u>

        Federal Rule of Criminal Procedure 21(b) allows for venue transfer, stating that, "[u]pon the defendant's motion, the court may transfer the proceeding . . . against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." *Id*. Trial courts, in exercising their discretion to determine when transfer is appropriate, have considered ten factors:

> (i) the location of the defendant; (ii) the location of possible witnesses; (iii) the location of the events at issue; (iv) the location of documents and records; (v) the disruption of defendant's business; (vi) the expense to the parties; (vii) the location of counsel; (viii) the relative accessibility of place of trial; (ix) the docket condition of each district; and (x) any other special elements which might affect the transfer.

*United States v. Smallwood*, 293 F. Supp. 2d 631, 640 (E.D. Va. 2003) (citing *Platt v. Minnesota Mining Co.*, 376 U.S. 240, 243-44, 11 L. Ed. 2d 674, 84 S. Ct. 769 (1964); *United States v. Heaps*, 39 F.3d 479, 483 (4th Cir. 1994)). This court will take each factor in turn and consider its application to this Motion.

    (1) <u>Location of Defendant</u>

        Defendant resides in Maryland. Although not in the Eastern District of Virginia, he is in the neighboring Federal

9

District and, as pointed out by the Government, Defendant's
residence is about the same distance from the courts in his
District as from this court.  Further, the commute to this
courthouse is insignificant, not presenting any great
inconvenience to Defendant.  As the Court noted in a case
involving the question of a venue transfer between this District
and the District of Columbia, the ten factors, "applied here,
weigh convincingly against transfer given the close geographic
proximity . . . of the federal courthouses. . . .  This close
proximity effectively eliminates from the transfer calculus the
usual considerations of convenience, accessibility, and expense."
*Smallwood*, 293 F. Supp. 2d at 640.

> (2) <u>Location of Witnesses</u>

The two victims will have to travel to either district,
with no great difference of convenience to them.  Defendant has
not identified by affidavit other witnesses he definitely intends
to call.  Those he mentions as possible witnesses either live in
the Washington, D.C., metropolitan area, making this venue
convenient for them, or will have to travel a significant
distance whether the case is transferred or remains in this
district.  As Maryland is not significantly more convenient for
any of Defendant's possible witnesses, this factor does not
mediate in favor of transfer.

> (3) <u>Location of Events</u>

The events at issue in this case did not occur in either Virginia or Maryland, making this factor irrelevant to the question of venue transfer.

### (4) Location of Documents and Records

Defendant has identified documents regarding the housing and school enrollment of one of the alleged victims in Maryland, and points out that other documents relating to employment and health care are with the State Department in Washington, DC. Given the ease in which documents can be transferred electronically and the close proximity between this district and Maryland, the Court finds that this factor does not weigh in favor of venue transfer.

### (5) Disruption of Defendant's Business

Defendant's stated plan of retiring and working as an independent contractor will not be disrupted or affected in any way by which venue is chosen.

### (6) Expense to the Parties

There is no evidence that Defendant will encounter any significant cost differential between a trial in this District and one in Maryland.

### (7) Location of Counsel

Defendant's counsel is located in Washington, DC, not in Maryland, so this factor does not weigh in favor of transfer to Maryland.

11

(8) <u>Relative Accessibility of Place of Trial</u>

The difference in accessibility between this courthouse and a Maryland courthouse is negligible.

(9) <u>Docket Condition</u>

Since the Speedy Trial Act, 18 U.S.C. § 3161, et seq., this factor has become less of a consideration for courts. *See, e.g., United States v. Oster*, 580 F. Supp. 599, 602 (S.D. W.Va. 1984). However, there is evidence that this case will be resolved more quickly if it remains in this Court. Although the number of pending criminal cases in the District of Maryland and the Eastern District of Virginia are similar, there are indications that a jury trial in this district would resolve in about half the time. *See* Federal Court Management Statistics, Administrative Office of the United States Courts (2006).

(10) <u>Special Elements</u>

Defendant argues that the "entire factual basis of [his] Motion to Dismiss the Indictment for Improper Venue And/OR to Transfer Venue should be considered a special element" because of the "unique circumstances" of this case. Reply to the United States' Opp'n to Def.'s Mot. to Dismiss at 13. The Court does not agree that Defendant's argument that proper venue lies in New York has any bearing of the question of whether venue is more appropriate in Virginia or Maryland. Additionally, the Court does not believe that allegations of a violation of Defendant's

12

Sixth Amendment right to counsel having any bearing on the question of which federal court is the most appropriate venue.

For these reasons, the Court finds that none of the factors weigh heavily in favor of transfer of venue for this case.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss the Indictment for Improper Venue and/or Transfer Venue will be denied.

An appropriate order will issue.

November 19, 2007                    _____/s/_____
Alexandria, Virginia                          James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE

13