```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division


UNITED STATES                    )
                                 )
      Plaintiff,                 )
                                 )          1:07cr404 (JCC)
      v.                         )
                                 )
PAUL GUILD,                      )
                                 )
      Defendant.                 )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion to Dismiss the Indictment for Violation of his Constitutional Rights Under *Kastigar v. United States*. For the following reasons, this motion will be held in abeyance until the completion of the Kastigar hearing.

### I. Background

This case arises out of alleged misconduct by Paul Guild ("Defendant") in Kiev, Ukraine, where he was performing a tour of duty as Regional Supervisory Executive Officer for the United States Agency for International Development ("USAID").

During the summer of 2007, John Doe 2 ("JD2"), a minor, lived with the Guild family. Mr. Guild acted as an academic mentor for both JD2 and John Doe 1 ("JD1"), also a minor, in his home, during which time Mr. Guild allegedly sexually abused JD1 and JD2. After a conversation with his mother and stepfather

1

about the abuse, which was reported to Medical Officer Marilyn Prekup ("Ms. Prekup"), JD1 was interviewed on August 5, 2007. Regional Security Officers ("RSOs") Agent David Walsh ("Agent Walsh") and Agent Ronnie Catipon ("Agent Catipon"), agents with the Diplomatic Security Service of the United States Department of State (DSS), conducted the interview.  During the interview, JD1 reported that Mr. Guild had instigated inappropriate sexual contact with him several times during the summer and that JD2 had been with him, and been similarly abused, on several of those occasions.  In addition, JD1 informed the agents that JD2 was on vacation and would be back in Kiev later that evening.  After the interview, Special Agent Lynn Falanga ("SA Falanga") of the DSS was contacted for guidance.  She ordered the agents to remove JD2 from the Guild's home, and when he arrived to Kiev that evening, he was placed with Ms. Prekup until he could return to the United States.  Agents contact his mother to inform them of the abuse reported by her son.

That evening, Mr. Guild was asked to come to the office of the USAID Director and was questioned by DSS Agents Walsh and Catipon regarding the abuse allegations.  Guild signed a form stating that he had "been granted use immunity," precluding the use of any of his answers and "evidence derived from the answer" from being "used against [him] in any criminal proceeding, except for perjury or false swearing."  Mem. in Sppt. of Def's Mot. to

Dismiss the Indictment for Violation of his Constitutional Rights Under *Kastigar v. United States* Ex. A.  Following the interview, Guild was ordered out of the country pursuant to an order of "involuntary curtailment," immediately terminating his tour of duty, and was issued travel orders for the following day.

SA Falanga held a meeting with members of the United State's Attorney's Office for Maryland on August 8, 2007, at which point the immunity agreement was discovered.  The case was then assigned to agents with no knowledge of what had occurred previously, Agent Edward Allen ("Agent Allen") and Agent Jason Griffin ("Agent Griffin").  Agent Allen attended the interview with JD2 on August 9, 2007, after being instructed not to speak with anyone about the matter before his presentation of the case to the United States Attorney's Office for the Eastern District of Maryland.  JD1 was also brought to the United States and interviewed by a social worker on August 15, 2007, after the original agents on the case had been removed.

On November 29, 2007, Defendant filed a Motion to Dismiss the Indictment for Violation of his Constitutional Rights Under *Kastigar v. United States*.  The Government responded on December 10, 2007.  This Motion is currently before the Court.

## II. Standard of Review

When a person has been granted use immunity for his testimony and is subsequently prosecuted, the burden of proof is

on the prosecution "to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States*, 406 U.S. 441, 460 (U.S. 1972). In order to determine if the government is rightfully "prosecut[ing] a previously useimmunized witness, the district court must hold a so-called Kastigar hearing to allow the government the opportunity to demonstrate that all its evidence came from sources independent of the compelled testimony." *United States v. Harris*, 973 F.2d 333, 336 (4th Cir. 1992). In making that showing, "[t]he government bears the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources" by a preponderance of the evidence. *Id.* (quoting *Kastigar* at 461-62)(quotations omitted). The district court's "determination is a factual finding subject to review under the clearly erroneous standard." *Id.* at 337 (citations omitted).

### III. Analysis

The Supreme Court held that "immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination," which is Constitutionally protected. *Kastigar*, 406 U.S. at 453. In cases where a witness has been given use immunity, there is a "total prohibition on use" of that evidence, which "provides a comprehensive safeguard, barring the use of compelled testimony as an investigatory lead, and also

barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures." *Kastigar*, 406 U.S. at 460.  Defendant was given use and derived use immunity for the statement he gave to DSS Agents when interviewed in Kiev.  The prosecution may not use any evidence obtained from the interview against him or as an investigatory lead.  If it has done so, the Court must consider whether the use of the testimony was completely harmless or if dismissal of the indictment is appropriate.  *Harris,* 973 F.2d at 338.

Defendant asserts that the Government has used Defendant's immunized testimony to shape their investigation.  In particular, he argues that "JD1 and JD2 had their stories shaped by investigators with knowledge of the immunized statements." Mem. in Sppt. of Def's Mot. at 10.  The Government argues that it took precautions in line with Fourth Circuit precedent, following "[t]he usual precautions, . . . [which] are for the government to insulate a prosecutor and/or investigator who is familiar with the immunized statement from subsequent prosecution of the compelled witness or to seal the incriminating documents." *United States v. Harris*, 973 F.2d 333, 337 (4th Cir. 1992).  The agents and prosecutors initially involved in the case were removed after the immunized interview before any further interviews took place.  The new agents and prosecutors are

5

unfamiliar with the contents of the immunized interview, which is not available to them. JD1 was initially interviewed before Defendant made his statement, and his statement is what prompted the investigation. According to the government, the interview of JD1, and not anything obtained from Defendant, provided guidance for the direction of the investigation and forms the requisite legitimate, independent source for its line of investigation and witness testimony.

The Government argues that a Kastigar hearing to demonstrate the legitimacy and independence of their evidence is unnecessary because Defendant has not shown that the Government's evidence is in any way derived from information in the immunized statement, and thus the burden has not shifted to the Government to demonstrate that the information was not improperly used. However, "[i]n a Kastigar hearing the burden upon the immunized witness is light: she need only show that she testified under a grant of immunity in order to shift to the government 'the burden of showing that [its] evidence is not tainted by establishing that [it] had an independent, legitimate source for the disputed evidence.'" *United States v. Harris*, 780 F. Supp. 385, 390 (D. W. Va. 1991), aff'd 973 F.2d 333 (4th Cir. 1992)(quoting *Kastigar*, 406 U.S. at 460). Defendant has demonstrated that he gave evidence under a grant of immunity, shifting the burden to the Government to prove that its evidence is not tainted.

Defendant has not demonstrated that the Government definitely used his immunized statement improperly, and thus it is not proper to dismiss the indictment at this stage of the proceedings. However, given the importance of protecting the Constitutional rights of criminal defendants, the Court holds that the Government must demonstrate that its evidence is not tainted. Therefore, a Kastigar hearing was begun on Friday, December 14, 2007, and will be continued on January 17 and 18, 2008, before the beginning of the criminal trial in this matter.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss the Indictment for Violation of his Constitutional Rights Under *Kastigar v. United States* will be held in abeyance until the completion of the Kastigar hearing

An appropriate order will issue.

December 18, 2007 /s/
Alexandria, Virginia James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE