```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division


UNITED STATES                     )
                                  )
        Plaintiff,                )
                                  )          1:07cr404 (JCC)
        v.                        )
                                  )
PAUL GUILD,                       )
                                  )
        Defendant.                )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant's Motion to Present Testimony Via Videoconference. For the following reasons, Defendant's Motion will be granted.

### I. Background

This case arises out of alleged misconduct by Paul Guild ("Defendant") in Kiev, Ukraine, where he was performing a tour of duty as Regional Supervisory Executive Officer for the United States Agency for International Development ("USAID"). Mr. Guild began his tour of duty in September 2003. During the summer of 2007, John Doe #2 ("JD2"), a minor child, lived with the Guild family. Mr. Guild acted as an academic mentor for both JD2 and another minor child, John Doe #1 ("JD1") in his home. Mr. Guild allegedly sexually abused JD1 and JD2 in his home during July and August of 2007, allegations laid out in the Superceding Indictment brought by the Government on December 6,

1

2007.

On November 23, 2007, Defendant filed a Motion to Compel Discovery and a Motion to Take Foreign Depositions Pursuant to Fed. R. Crim. P. 15(a).  Defendant's Motion to Compel Discovery was granted in part and denied in part, and his Motion to Take Foreign Depositions Pursuant Fed. R. Crim. P. 15(a) was denied.  On December 31, 2007, Defendant filed a Supplemental Memorandum to his Motion to Take Foreign Depositions Pursuant Fed. R. Crim. P. 15(a). During the hearing on January 4, 2008, Defendant made an oral Motion to Present Testimony via Videoconferencing.  The Court denied Defendant's Motion to Take Foreign Depositions on January 9, 2008, finding that Defendant had not demonstrated that the required testimony was sufficiently material to justify depositions, and ordered Defendant to file a written Motion to Present Testimony via Videoconferencing.

On January 11, 2008, Defendant filed a Motion to Present Testimony via Videoconferencing.  The Government responded on January 13, 2008.  Defendant filed a Supplement to his Motion on January 15, 2008.  This Motion is currently before the Court.

## II. Standard of Review

The Federal Rules of Criminal Procedure mandate that "[i]n every trial the testimony of witnesses must be taken in open court, unless otherwise provided by a statute or by rules

adopted under 28 U.S.C. §§ 2072-2077." Fed. R. Crim. P. 26.  A trial court's "[i]nterpretation of the Federal Rules of Criminal Procedure is a legal issue subject to de novo review."  *United States v. Roman-Zarate*, 115 F.3d 778, 781 (10th Cir. 1997); *see also United States v. Burke*, 345 F.3d 416, 421 (6th Cir. 2003).

### III. Analysis

Defendant desires to present the trial testimony of several witnesses who reside abroad.  Several are United States citizens subject to the subpoena power of this Court, and others are foreign nationals.  Defendant wishes to present the testimony of these witnesses via video conference rather than bring them to the United States to testify in person.  The Court must determine if this is a circumstance which warrants the use of video testimony at trial.

The Fourth Circuit has affirmed the use of video conferencing in criminal matters in rare circumstances when the specific qualities of the case made it necessary, and most frequently for hearings other than at trial.  *See, e.g.,United States v. McClure,* 241 Fed. Appx. 105, 109 (4th Cir. 2007)(affirming the use of video conferencing at a mental competency hearing); *United States v. Baker*, 45 F.3d 837 (4th Cir. 1995)(affirming the use of video conferencing at a civil commitment hearing after a finding that it did not violate Appellant's constitutional or statutory rights).

3

Defendant argues that he meets the strictest standard that has been applied to the question of video testimony, that set forth in a Maryland state law that has been upheld by the Supreme Court. In *Maryland v. Craig*, 497 U.S. 836 (U.S. 1990), the Supreme Court found that the Maryland statute, which allowed allows the use of video testimony for child victims of sexual assault in certain circumstances, does not violate the Confrontation Clause of the sixth amendment despite a lack of face-to-face confrontation. Defendant summarizes that requisite test for the Court as determining whether video testimony is "in the interest of justice and whether there are good public policy grounds for it." Hr'g Tr. 100:15-17, Jan. 14, 2008. He argues that since the Confrontation Clause is not implicated by witnesses for the defense testifying via video feed, the standard upheld in *Maryland v. Craig* is more than sufficient for determining when video testimony is appropriate, and that, since he meets that standard, video testimony should be allowed.

The standard upheld by the Supreme Court in *Maryland v. Craig* is more involved than that proffered by Defendant. 497 U.S. at 855-856. The Supreme Court found that the statute's allowance of live video testimony was proper because of the significant evidentiary requirements it imposes on parties wishing to offer testimony via closed circuit television. The law requires trial courts to "hear evidence and determine whether

use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify," and to determine "that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." *Id.* In addition, "the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis." *Id.*

The Court finds that, while informative, the *Maryland v. Craig* standard is not appropriate in this case. The Confrontation Clause is not implicated by the proffered witnesses in this case, and the policy reasons for video testimony in this matter have to do with cost and distance of travel for witnesses rather than emotional distress or trauma. However, the Supreme Court's decision emphasizes the importance of live testimony in criminal proceedings and suggests to the Court that the party wishing to present its testimony via television feed must present evidence of its necessity rather than simply stating a desire to use the technology.

The Court looks to the Federal Rules for guidance in determining the appropriate standard for allowance of video testimony in situations which do not implicate the Confrontation Clause. There is no provision in the Federal Rules of Criminal Procedure for video testimony. When an amendment to Rule 26 was

5

proposed, the Supreme Court objected since the amendment "would not limit the use of remote testimony to 'instances where there has been a "case-specific finding" that it is "necessary to further an important public policy"'" in accord with Supreme Court precedent.  *United States v. Yates*, 438 F.3d 1307, 1314-15 (11th Cir. 2006)(citing Order of the Supreme Court, 207 F.R.D. 89, 93 (2002)).  Unlike the Criminal Rules, the Federal Rules of Civil Procedure were amended to allow video testimony in civil proceedings "[f]or good cause in compelling circumstances and with appropriate safeguards."  Fed. R. Civ. P. 43(a).

Even more so than in civil trials, there is a preference for live testimony in criminal proceedings. *See, e.g., United States v. Baker*, 45 F.3d 837, 844-845 (4th Cir. 1995); *United States v. Yates*, 438 F.3d at 1314.  However, that preference "must occasionally give way to considerations of public policy and the necessities of the case."  *Maryland v. Craig*, 497 U.S. at 849 (quoting *Mattox v. United States*, 156 U.S. 237, 243 (U.S. 1895)).  Recognizing both the importance of live testimony in a criminal trial and the fact that the Confrontation Clause is not implicated by this testimony, the Court will use Federal Rule of Civil Procedure 43(a) as the threshold showing for the use of video testimony in this instance.  Defendant must demonstrate that this is a situation of compelling circumstances where there is good cause for the Court to allow

6

videoconferencing and that there are measures in place to safeguard the important interests at stake in criminal proceedings.

Defendant cites the expense of bringing multiple foreign witnesses to trial as a compelling reason that testimony should be taken via videoconferencing.  In the Supplement to his Motion to Present Testimony Via Videoconference, Defendant submitted that it would cost approximately $10,000 to procure videoconferencing in this Court and approximately twice as much to bring all of the foreign residents he wishes to testify. Def's Supp. to Mot. to Present Testimony Via Videoconference at 2.  The Court notes that Defendant has not demonstrated his inability to bring any or all of the foreign witnesses, but recognizes the significant cost differential between the live testimony and video testimony if all witnesses are brought.

In addition, Defendant has provided further information regarding the witnesses whose testimony he wishes to present. The Government argues that Defendant has not demonstrated the witnesses' testimony will be relevant and not cumulative. Particularly as the Court is to compare the relative costs of video testimony and live testimony, the number of witnesses Defendant will call is important to the question of whether videoconferencing is a necessity in this case.  The Court notes the length of Defendant's list of foreign witnesses and the

7

extensive cost involved in bringing them all to the United States.  However, the Court will withhold any judgment on the admissibility of any of their testimony until trial and therefore cannot determine at this time the exact number of witnesses whose testimony will be admissible in this case.

Defendant also notes that the Court does not have subpoena power over foreign nationals residing outside of the United States but that he would like to present the testimony of several foreign witnesses at trial.  Given that the alleged occurrences giving rise to the allegations in the Indictment occurs overseas, the Court is sensitive to the need of Defendant to present foreign nationals as witnesses.  As their presence cannot be definitively secured by means other than via video conference, there is a strong case for the allowance of the testimony of foreign nationals in that manner.

Defendant submitted to the Court that United States Consular Officers will be available in the remote locations where the witnesses are being videotaped.  These persons will be available to swear the witnesses and provide an assurance that the proceedings maintain the appropriate level of formality and accuracy.  Defendant gave his assurances that he will cooperate with the Government to provide the witnesses with any documentary evidence they may need to view, and that a camera will be in the courtroom to allow the witness to understand the proceedings.

Defendant has demonstrated to the Court that there are compelling circumstances for the allowance of videotaped testimony for overseas witnesses.  Defendant has agreed to assume the cost and responsibility for procuring and implementing the videoconferencing technology and for ensuring that appropriate safeguards are in place to protect the sanctity of the criminal proceedings.  This decision to allow the use of videoconferencing technology in no way indicates that the testimony of all or any of the proposed witnesses will be found to be relevant and admissible at trial.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Present Testimony Via Videoconference will be granted.

An appropriate order will issue.

January 17, 2008                               /s/
Alexandria, Virginia                  James C. Cacheris
                                UNITED STATES DISTRICT COURT JUDGE