```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division

UNITED STATES                    )
                                 )
      Plaintiff,                 )
                                 )             1:07cr404 (JCC)
      v.                         )
                                 )
PAUL GUILD,                      )
                                 )
      Defendant.                 )
```

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion to Dismiss the Indictment on the Grounds of Prosecutorial Misconduct. For the following reasons, this Motion will be denied.

### I. Background

This case arises out of alleged misconduct by Paul Guild ("Defendant") in Kiev, Ukraine, where he was performing a tour of duty as Regional Supervisory Executive Officer for the United States Agency for International Development ("USAID"). Mr. Guild began his tour of duty in September 2003. During the summer of 2007, John Doe #2 ("JD2"), a minor child, lived with the Guild family. Mr. Guild acted as an academic mentor for both JD2 and another minor child, John Doe #1 ("JD1") in his home. Mr. Guild allegedly sexually abused JD1 and JD2 in his home during July and August of 2007, allegations laid out in the

1

Superceding Indictment brought by the Government on December 6, 2007.

Defendant returned to the United States on August 6, 2007. The investigation of Defendant's case was initially assigned to Special Agent Lynn Falanga ("SA Falanga") but on August 8, 2007, was transferred to Special Agents Edward Allen ("SA Allen") and Jason Griffin ("SA Griffin"). On August 16, 2007, an American Foreign Service Association ("AFSA") labor attorney, Zlatana Badrich ("Ms. Badrich") emailed SA Falanga regarding Defendant. Ms. Badrich indicated that she "ha[d] been contacted by a USAID client, Paul Guild, regarding his case," and asked who was undertaking the investigation. SA Falanga replied to her email the same day, informing her that the case had been transferred to SA Allen, and copying Agents Allen and Griffin on the email. SA Allen forwarded the email to Assistant United States Attorney Patricia Haynes ("AUSA Haynes"), the prosecutor assigned to the case, indicating that Ms. Badrich "is one of the American Foreign Service Association labor attorneys."

By August 17, 2007, Defendant had retained J. Michael Hannon ("Mr. Hannon") as counsel. In a letter dated August 23, 2007, Mr. Hannon indicated to Frank McDonough ("Mr. McDonough"), the acting Deputy Director for Human Resources at USAID, that he had been retained by Defendant. He insisted that "the investigation must maintain the highest level of

2

confidentiality," but indicated that Defendant would "continue to deal with [Mr. McDonough] directly on administrative matters."

The Defendant subsequently made a request to USAID for leave to travel to Oregon, a request that McDonough transmitted to SA Allen. On August 28, 2007, SA Allen, with AUSA Haynes' permission, called Defendant regarding his travel request and asked him to bring his passports to Agent Allen's office in Rosslyn, VA, the following day. During the conversation, Defendant indicated that he would be at Reagan National Airport the next morning. On August 29, 2007, Defendant was arrested at Reagan National Airport in Arlington, Virginia.

On January 4, 2008, Defendant filed a Motion to Dismiss the Indictment on the Grounds of Prosecutorial Misconduct. The Government responded on January 11, 2008. This Motion is currently before the Court.

## II. Standard of Review

"Courts have generally held that counsel for United States are bound by the rules of ethics of the state jurisdiction in which they are practicing." *United States v. Joseph Binder Schweizer Emplem Co.*, 167 F. Supp. 2d 862, 864 (E.D.N.C. 2001) (citing *McCallum v. CSX Transportation, Inc.*, 149 F.R.D. 104, 108 (M.D.N.C. 1993)). The applicable rule in this Motion is Virginia Rule of Professional Conduct 4.2, which reads, "a lawyer shall not communicate about the subject of representation with a person

the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so." *Id*. The application of the Rules of Professional Conduct is a question of law and is reviewed de novo. *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993).

### III. Analysis

As "a general working principle," the Supreme Court has held that "there is a presumption of legitimacy accorded to the Government's official conduct," and "where the presumption is applicable, clear evidence is usually required to displace it." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 175 (U.S. 2004)(citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *United States Dep't of State v. Ray*, 502 U.S. 164, 178-79 (1991); *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926)). Therefore, in order for Defendant to prevail on his charges of prosecutorial misconduct, he must demonstrate clear evidence that the Government acted improperly.

1) Rule 4.2

Defendant's most significant argument is his charge that prosecuting attorney AUSA Haynes violated Virginia Rule of Professional Conduct 4.2 by allowing Agent Allen to contact Defendant on August 28, 2007, while Defendant was represented by an attorney. The Rule prohibits a lawyer from "communicat[ing]

4

about the subject of representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so." Va. Rule Prof. Conduct 4.2.  This Court will consider each element of the charged offense in turn, first considering whether AUSA Haynes communicated about the subject of representation with a person she knew to be represented in the criminal matter she was investigating, then whether she was authorized by law to allow the communication.

(A) <u>Knows to be Represented in the Matter</u>

The Government has produced evidence demonstrating that it did not know nor did it have reason to know that criminal attorney Mr. Hannon had been retained by Defendant to represent him in this matter.  Defendant contends that AUSA Haynes had actual knowledge that Mr. Hannon was representing Defendant but is hiding that knowledge from the Court.  Def.'s Supp. to Mot. for Sanctions due to Prosecutorial Misconduct at 3.  However, Mr. Hannon himself, when he informed the Deputy Director of Human Resources at USAID of his representation on August 23, 2007, asked that the Director "maintain the highest level of confidentiality."  Gov. Resp. to Def.'s Mot. to Dismiss Ex. B. The Court will not hold a prosecutor responsible for not having knowledge of representation when the representing attorney himself requested that no one be told of it.  Defendant has

5

provided no evidence that AUSA Haynes knew or could have known that he was represented by Mr. Hannon on August 28, 2007, and therefore, Mr. Hannon's representation cannot form the factual basis for a Rule 4.2 violation.  The Court will turn to Defendant's contention that AUSA Haynes knew that Defendant was represented by labor attorney Ms. Badrich when she authorized contact of Defendant.

There is some question regarding whether AUSA Haynes even knew that Defendant was represented by Ms. Badrich in any capacity.  Defendant's assertion that AUSA Haynes knew of the representation is based upon an email from Ms. Badrich to the original agent assigned to the case that was forwarded to AUSA Haynes.  It read: "I [Ms. Badrich] have been contacted by a USAID client, Paul Guild, regarding his case."  Resp. of the United States to Defendant's Mot. to Dismiss the Indictment on the Grounds of Prosecutorial Misconduct Ex. 2.  The new agent on the case, SA Allen, forwarded the email exchange to AUSA Haynes, indicating that Ms. Badrich "is one of the American Foreign Service Association labor attorneys."  *Id.*  The Court notes that this is thin evidence on which to base a claim that AUSA Haynes knew that Defendant was represented by an attorney, as the phrase "have been contacted" does not definitively connote "have been retained."  It is not clear to the Court that AUSA Haynes was aware that Ms. Badrich was representing Defendant.

6

More importantly, Defendant has not demonstrated that Ms. Badrich represents Defendant in the criminal matter being investigated by SA Allen and AUSA Haynes. Ms. Badrich testified that she represents Defendant in administrative matters in her capacity as "an attorney on staff with the American Foreign Service Association, which is the labor union representing foreign service officers." Hr'g Tr. 25:3-5, Jan. 14, 2008. She testified that she does not and has never represented Defendant or any other person in a criminal matter. *Id.* at 35-38. AUSA Haynes was aware that "AFSA attorneys assist employees purely with resolving labor disputes only and do not 'represent' employees as the process is supposed to be non-adversarial." Resp. of the United States to Defendant's Mot. to Dismiss the Indictment on the Grounds of Prosecutorial Misconduct at 10-11. Thus, even if AUSA Haynes was aware of Ms. Badrich's representation, she was certainly aware that Ms. Badrich was an administrative, not a criminal, attorney and thus was not representing Defendant in the criminal matter that AUSA Haynes was investigating.

Defendant argues that although Ms. Badrich is a labor attorney, representing Defendant only for administrative proceedings with his employers, any form of representation is sufficient for the purposes of Rule 4.2 such that "[i]t does not matter whether Ms. Badrich was a labor lawyer, patent lawyer, or

7

law librarian." Supp. to Defendant's Mot. for Sanctions due to Prosecutorial Misconduct at 2. However, the American Bar Association Committee on Professional Responsibility disagrees. It has written that "[i[n order for the prohibition" against communication with a represented party "to apply, the subject matter of the representation needs to have crystallized between the client and the lawyer." ABA Formal Op. 95-396, at 6 (July 28, 1995). Rule 4.2 "contemplates that the matter is defined and specific, such that the communicating lawyer can be placed on notice of the subject of representation." *Id.* Knowledge that a party is represented in an administrative capacity is not tantamount to knowledge that a party is represented in a criminal proceeding. "[A] client or [his] lawyer cannot simply claim blanket, inchoate representation for all future conduct whatever it may prove to be, and expect the prohibition on communications to apply. Indeed, in those circumstances, the communicating lawyer could engage in communications with the represented person without violating the rule." *Id.* Ms. Badrich's representation of Defendant as a non-criminal labor lawyer is not representation in this, a criminal matter, for the purposes of Rule 4.2.

Defendant not only failed to conclusively demonstrate that AUSA Haynes had actual knowledge that Ms. Badrich represented Defendant, but also failed to demonstrate that the subject matter of Ms. Badrich's representation was the criminal

8

matter AUSA Haynes was investigating. The Court finds that AUSA Haynes did not "communicate . . . with a person [she] kn[e]w to be represented by another lawyer." Rule 4.2.

          (B) <u>Unless Authorized by Law</u>

Even were the Court to find that AUSA Haynes knew that Defendant was represented in the criminal matter on August 28, 2007, Defendant also must show that the contact was not authorized by law. Comment 5 to Rule 4.2 notes that, "[i]n circumstances where applicable judicial precedent has approved investigative contacts in pre-indictment, noncustodial circumstances, and they are not prohibited by any provision of the United States Constitution or the Virginia Constitution, they should be considered to be authorized by law within the meaning of the Rule." Va. R. Prof'l Conduct 4.2 Cmt. 5. Defendant had not been indicted nor was he in custody at the time of the phone call on August 28, 2007. Therefore, if there is "applicable judicial precedent" indicating that this was an "approved investigative contact[]," the contact could not have violated Rule 4.2.

Another Court in this circuit has noted that, "[w]hile the United States Court of Appeals for the Fourth Circuit ('Fourth Circuit') has not specifically addressed the issue, federal appellate case law is virtually unanimous in holding that pre-indictment operations against represented targets are not

contrary to the rules of professional conduct." *Binder*, 167 F. Supp. 2d at 866 (citations omitted).  As in this case, the contact in *Binder* was made by an agent directly with the subject of an investigation, not knowing that the subject was represented.  The court noted that "[a]lthough these cases usually involve undercover contacts, most of the decisions approve pre-indictment contacts in categorical terms.  Research shows that no court has ever suppressed evidence in a criminal case because a prosecutor violated Rule 4.2 in the course of an investigation before the grand jury indicted the defendant."  *Id*. (citation omitted).  *See also United States v. Worthington*, 911 F.2d 726 (Table), 1990 WL 116618 at *4 (4th Cir. 1990)(upholding a lower court's finding that "the use of informants by government prosecutors in a preindictment, non-custodial situation ... was within [Rule 4.2's] 'authorized by law' exception").

       Defendant argues that SA Allen's phone call was an attempt to lure Defendant into Virginia for the purpose of arresting him here, thereby creating venue in this jurisdiction.  The Government does not deny that SA Allen had more than one motive in contacting Defendant.  SA Allen testified that he contacted Defendant to ascertain his whereabouts and request his passport, both because he was concerned that Defendant might flee to Canada and in order to determine where he would be located for the purposes of arrest.  Hr'g Tr. 24-25, 27:10-13, Jan. 17, 2008.

Defendant argues that this communication could not have been "authorized by law" in accord with the statute since it was merely a ruse to effect arrest of Defendant in Virginia.

This Court does not consider it unusual for the Government to be concerned that the target of an investigation might flee the country to evade arrest and prosecution. The Court sees nothing untoward about an agent contacting someone not known to be represented in attempt to determine the target's location. Although most claims of this type of prosecutorial misconduct seek to have evidence suppressed, *see, e.g. Binder*, 167 F. Supp. 2d at 867; *United States v. Marcus*, 849 F. Supp. 417 (D. Md. 1994), this conversation did not adduce any evidence, incriminatory or otherwise. The agent merely discovered Defendant's plan to be at Reagan National Airport. As a result of this information, SA Allen knew when Defendant was going to be in Virginia and arrested him here. Defendant has not argued that there was anything improper about the execution of the arrest itself, merely that he is unhappy that it occurred in this District. However, there is nothing improper about the Government taking venue into account where deciding where to prosecute. *See, e.g., United States v. Smallwood*, 293 F. Supp. 2d 631, 642 (E.D. Va. 2003) ("In the end, the government's motives for choosing this venue are irrelevant.").

Defendant attempts to distinguish the facts of the

11

*Binder* case from those of this matter, pointing out that the agent asked the subject in *Binder* whether she was represented, whereas Agent Allen did not make the same query of Defendant. Although the fact that "the party connoted to the government that she was not represented by counsel" made the *Binder* Court "especially" sure that this was the correct outcome, it was not the definitive factor in its legal reasoning. *Binder*, 167 F. Supp. 2d at 866. The court "decide[d] that no rule of professional conduct precludes pre-indictment contacts between the government and a represented party in a non-custodial setting." *Id.* Not only was AUSA Haynes unaware that Defendant was represented in the criminal matter, the contact she authorized between SA Allen and Defendant was in a pre-indictment, non-custodial setting and thus within the "authorized by law" exception to Rule 4.2. *See also United States v. Balter,* 91 F.3d 427, 436 (3d Cir. 1996)(finding that "with the exception of the Second Circuit, every court of appeals that has considered a similar case has held . . . that rules such as New Jersey Rule 4.2 [identical in the relevant part to Virginia Rule 4.2] do not apply to pre-indictment criminal investigations by government attorneys," and listing case law).

Defendant has not presented evidence that either AUSA Haynes or SA Allen knew that Defendant was represented in this matter when SA Allen contacted Defendant by telephone on August

12

28, 2007, nor has he demonstrated that the contact that occurred was not authorized by law.  Therefore, the Court finds that there has been no prosecutorial misconduct in violation of Virginia Rule of Professional Conduct 4.2.  The Court notes that "[c]ertain rules of the Virginia Rules of Professional Conduct are imperative and 'failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process.'" *United States v. Franklin*, 177 F. Supp. 2d 459, 466 (E.D. Va. 2001)(citing Preamble, Virginia Rules of Professional Conduct).  However, "[w]e have been cautioned . . . [to] 'always remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons.'" *Id.* (quoting *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142 (4th Cir. 1992)).  This Court is concerned that such may be the case with this Motion, as Defendant appears to be making a multitude of accusations without sufficient evidence to support them, and has blatantly misstated witness testimony in attempt to manufacture evidence in support of his arguments.[1]

    2) <u>Additional Misconduct</u>

---

[1] Defendant's Supplemental Findings of Fact blatantly misstates testimony adduced at the January 17, 2008 hearing, despite Defendant having obtained a copy of the transcript.  Def.'s Second. Supp. to Mot. for Sanctions.  For example, Defendant states that Agent Allen testified that he "wanted Mr. Guild's passport 'with respect to a labor matter that Zlatana Badrich represented' Mr. Guild in."  However, Agent Allen was asked if it was "with respect to a labor matter that Zlatana Badrich represented ***you*** [Agent Allen]."  Hr'g Tr. 25:1-3 (emphasis added)).  The question had nothing to do either with the reason Agent Allen desired Defendant's passports nor any administrative proceeding involving Ms. Badrich and Defendant.  This Court finds Defendant's cavalier misrepresentations troubling.

Along with his argument that AUSA Haynes violated Rule 4.2, Defendant also argues that the Government has not properly provided Jencks, Brady, and other exculpatory material. Defendant has not demonstrated that he has suffered any prejudice resulting from what he alleges is the Government's failure to provide him with discovery in a timely matter. Although the Court recognizes that it may have been possible for the Government to have provided some of the information more quickly than it did, Defendant has produced no evidence that the Government acted in bad faith or that its provision was outside the time frames established by law or by this Court. Defendant also improperly includes alleged violations of his constitutional rights under *Kastigar v. United States* in this Motion. The Court has held a Kastigar hearing to address Defendant's allegations, and therefore will not consider them as part of this Motion.

3) <u>Remedy</u>

Defendant argues that the "totality of the circumstances" warrants dismissal of the indictment. Def.'s Mot. at 16. He does not cite to any authority for the proposition that dismissal of the indictment would be the proper remedy, and admits that "without a finding that ethical rule 4.2 was violated, dismissal is likely an unwarranted sanction." Def.'s Supp. to Mot. at 9. The Court finds that not only has Defendant not demonstrated that AUSA Haynes breached Rule 4.2, but that,

even if she had, dismissal of the indictment would not be the appropriate remedy.  Defendant admits that the Government did not obtain any incriminating evidence from their alleged breach of Rule 4.2, but merely was able to ascertain when Defendant would be in Virginia.  Hr'g Tr. 61:11-14.  Defendant suffers no prejudice from being tried in this Court rather than another federal court, particularly given his concern that he receive as speedy a trial as possible.  Mem. in Sppt. of Def's Mot. to Present Testimony Via Videoconferencing at 11.  If anything, Defendant's desire for a rapid trial is best served by this Court, where a jury trial is likely to resolve this case in about half the time than in Maryland, the district preferred by Defendant.  Federal Court Management Statistics, Administrative Office of the United States Courts (2006).  This Court finds that there was no prosecutorial misconduct nor prejudice to Defendant, and thus that no sanctions against the Government are warranted.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss the Indictment on the Grounds of Prosecutorial Misconduct will be denied.

An appropriate order will issue.


January 31, 2008                            /s/
Alexandria, Virginia              James C. Cacheris
                                  UNITED STATES DISTRICT COURT JUDGE