```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF VIRGINIA

                          Alexandria Division


UNITED STATES                     )
                                  )
        Plaintiff,                )
                                  )          1:07cr404 (JCC)
        v.                        )
                                  )
PAUL GUILD,                       )
                                  )
        Defendant.                )
```

**M E M O R A N D U M   O P I N I O N**

    This matter is before the Court on Defendant's Motion to Vacate Judgment and for a New Trial.  For the following reasons, this motion will be denied.

### I. Background

    This case arises out of alleged misconduct by Paul Guild ("Defendant") in Kiev, Ukraine, where he was performing a tour of duty as part of his employment with the United States Agency for International Development ("USAID").  During the summer of 2007, John Doe #2 ("JD2"), a minor child, lived with the Guild family.  Mr. Guild acted as an academic mentor for both JD2 and another minor child, John Doe #1 ("JD1") in his home.  Mr. Guild allegedly sexually abused JD1 and JD2 in his home during July and August of 2007.

    A jury trial was held January 22 through 31, 2008.  Mr. Guild was convicted of two counts of assault by striking and

1

beating both JD1 and JD2 and of one count of sexually abusing JD1. He was acquitted of the other five counts of sexual assault.

On February 14, 2008, Mr. Guild filed a Motion to Vacate Judgment and for a New Trial. This Motion is currently before the Court.

## II. Standard of Review

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A trial court's decision to grant or deny a Motion under this Rule is reviewed for abuse of discretion. *See, e.g., United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006); *United States v. Perry*, 335 F.3d 316, 319 (4th Cir. 2003). The Fourth Circuit has emphasized that "a district court should exercise its discretion to grant a new trial 'sparingly.'" *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997)(citing *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985)); *see also Perry*, 335 F.3d at 319.

## III. Analysis

Defendant presents two main arguments for his assertion that justice requires a new trial in this case. First, he argues that the Prosecution committed a *Brady* violation by failing to supply Defendant with evidence that could be used to impeach one

of the Prosecution's witnesses, and second, he argues that Count 8 of the Superceding Indictment was constructively amended. The Court will consider each argument in turn.

A) *Brady* Violation

Defendant argues that the Prosecution failed to disclose information to Defendant regarding prior claims of sexual harassment by JD2's mother ("Karen"), in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Defendant believes that Karen, one of the Prosecution's witnesses, filed several past claims of sexual harassment that Defendant argues the Prosecution should have provided to him as impeachment evidence under *Brady* and *Giglio*. *Id.*; *Giglio v. United States,* 405 U.S. 150, 154 (1972). The Prosecution argues in response that the information sought by Defendant "is not exculpatory, not impeaching, and not material." Resp. of the United States to Def.'s Mot. to Vacate J. and for a New Trial at 3.

In *Brady,* the Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. at 87. Evidence affecting credibility of witnesses can be included as material evidence within the ambit of the *Brady* rule. *Giglio v. United States,* 405 U.S. 150, 154 (1972). Suppressed "evidence is material only if there is a reasonable probability that, had the

3

evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Defendant has not shown that the Prosecution failed to provide *Brady* or *Giglio* information to Defendant. The information that the prosecutors discovered and disclosed to Defendant involved a successful sexual harassment suit brought by Karen.[1] Even if the Prosecution had suppressed that information, existence of a previous successful suit does not imply a lack of credibility on the part of the person bringing the suit and thus does not constitute impeachment evidence under *Giglio*. In addition, the facts surrounding the earlier suit are unrelated to the facts in Defendant's case, and are thereby immaterial to his guilt or punishment.

Defendant alleges that there were other claims of harassment made by the mother of JD2 in addition to those adduced at trial, evidence of which he discovered during the course of trial. He does not allege that the Prosecution had knowledge of such claims nor that they failed to disclose the information they had. Instead, he argues that USAID had the information, and now requests the Court to direct USAID to comply with Defendant's broad discovery request. The Supreme Court has made clear that

---

[1] The subject of Karen's allegations, Mr. Matthews, admitted that he was admonished as a result of the litigation, and that she received a money judgment. Trial Tr. vol. 5, 32-33, Jan. 28, 2008.

"[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *see also Pa. v. Ritchie*, 480 U.S. 39, 59 (1987)("Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.").

Furthermore, Defendant was able to obtain information regarding the allegations from sources other than the Prosecution. Def.'s Mem. in Supp. of Mot. to Vacate J. and for a New Trial at 3-4. "*Brady* requires that the government disclose only evidence that is not available to the defense from other sources, either directly or through diligent investigation." *Barnes v. Thompson*, 58 F.3d 971, 976 (4th Cir. 1995) (citing *Stockton v. Murray*, 41 F.3d 920, 927 (4th Cir. 1994); *United States v. Wilson,* 901 F.2d 378, 38 (4th Cir. 1990)). Not only is there no evidence that the Prosecution failed to disclose *Brady* information in its possession, but the information now claimed to be probative was discoverable by other means.

To show a *Brady* violation, Defendant must demonstrate that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. Defendant cannot argue that these other alleged claims are directly relevant to the issues in this case, as they occurred many years ago and did

not involve JD2.  Instead, Defendant argues that the claims are further evidence of Karen's lack of credibility.  In particular, Defendant believes that the power of attorney he was given over JD2 "gave him unbridled authority with respect to [JD2]," such that he had the authority to perform the physical beating that formed the basis of Count 7, on which Defendant was convicted.  He believes "that the only reason that the jury convicted him on that count is because [JD2's] mother told them that she would not have permitted Mr. Guild to spank her son. So her credibility goes directly to that particular count."  Oral Argument, Apr. 4, 2008.  The jury acquitted Defendant of the other counts regarding JD2.

   Evidence of earlier allegations by Karen would have been unlikely to change the jury's perception of her credibility.  Defendant was able to impeach her with existing evidence, and the jury found that he was not guilty of all but one count involving Karen's son.  Defendant admits that he was able to impeach Karen on the stand, and he put on several witnesses who testified regarding her character and reputation for veracity, including the subject of her earlier harassment complaint.  Def.'s Mem. in Supp. at 6.  He questioned Karen about a report she had made several years earlier about her son being touched inappropriately, and inquired into her alleged motive for encouraging her son to report that he had been abused by the

6

Defendant, asking about the effect the sexual harassment claim at issue had on her employment prospects. Karen was also subject to recall and could have been questioned regarding any new information Defendant discovered during the trial. There is no reason to conclude that additional impeachment evidence, similar to what was already presented, would change the outcome of the case.

Not only would the alleged evidence not have changed the outcome of the proceeding, it appears unlikely to the Court that additional evidence regarding Karen's credibility would have even been admissible during the trial, both because of its prejudicial nature and because it would be cumulative. Defendant himself admits that information about Karen's other alleged harassment complaints would likely be excluded from any future trial under the Federal Rules of Evidence. Oral Argument, Apr. 4, 2008. Even if evidence of Karen's alleged claims exists and could meet the requirements of materiality to be admitted into evidence, there is no reasonable probability that such evidence would have changed the result of the proceeding and thus is not material within the meaning of *Brady*. The Court will find that there has been no *Brady* violation.

    B) Constructive Amendment of Count 8

Defendant argues that there was a constructive amendment of Count 8 of the Superseding Indictment. "When the

government, through its presentation of evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment--sometimes referred to as a fatal variance--occurs." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999)(citing *United States v. Redd*, 161 F.3d 793, 795 (4th Cir. 1998)). A variance is fatal when it "work[s] to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." *United States v. Schnabel*, 939 F.2d 197, 203 (4th Cir. 1991). However, any variance between the indictment and the evidence or jury instructions "which does not result in prejudice to the accused is inconsequential. Prejudice is shown if: (1) The indictment does not fairly appraise the defendant as to the charges, or (2) the defendant is not protected from subsequent prosecutions for the same crime." *Id.*

Count 8 of the Superceding Indictment charged that "Paul Guild intentionally touched the genitalia of John Doe #1, that is, his penis, not through the clothing, and with an intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of Paul Guild." *Id*. Defendant now argues that the jury instruction broadened the basis for a conviction beyond that described in the Superceding Indictment. As to Count 8, the

instruction given to the jury was that "the government must prove . . . that the defendant, Paul Guild, engaged in a sexual act with John Doe 1, . . . with the intent to abuse, humiliate, harass, or degrade John Doe 1 . . . or to arouse and gratify the sexual desire of Paul Guild." Trial Tr. vol. 6, 74-75, Jan. 29, 2008. Defendant argues that "Count 8 of the superseding indictment allows a conviction only if Mr. Guild intended to abuse, humiliate, harass, degrade, and arouse and sexually gratify himself," and thus that the jury instruction impermissibly broadens the indictment. Def.'s Mem. in Supp. at 10.

The Prosecution argues that "[t]he only plausible reading of the indictment is that reflected in the jury instructions." Resp. to Def.'s Mot. to Vacate J. and for a New Trial at 11. Defendant's counsel also explicitly interpreted the indictment in this way. In arguing before the Court as to how it should answer the jury's request for a definition of abuse and sexual gratification as used in the indictment, he stated, "I'm certain the abuse language has to do with JD1 or JD2, that he [Defendant] acted with the intent to abuse them. And then sexual gratification has to do with the other side of the coin, . . . [as to] Mr. Guild." Trial Tr. vol. 7, 4:18-25, Jan. 30, 2008. The Supreme Court, in its own statutory interpretations, has used "the grammatical 'rule of the last antecedent,' according to

9

which a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *see also FTC v. Mandel*, 359 U.S. 385, 387 (1959). In accordance with the rule, "Paul Guild," the limiting clause in the indictment, modifies only "arouse and gratify the sexual desire of," the phrase which it immediately follows. Common usage and natural reading of the indictment also lead to the conclusion that the language of "abuse, humiliate, harass, degrade" relates to a victim, whom the jury instructions specifically identify. The Court finds that the interpretation of the indictment given in the jury instructions and described by Defendant's counsel in his answer to the jury's question is that in line with the Supreme Court's guidelines for statutory interpretation. The proposed interpretation, that Defendant intended to abuse or harass himself, stretches the bounds of what could be considered a fair reading of the indictment. *Stirone v. United States*, 361 U.S. 212, 217 (1960).

The Fourth Circuit has held that "[a] variance in the indictment violates a defendant's rights only if it prejudices him," which "occurs only when the variance either 'surprises the defendant at trial and hinders the preparation of his defense, or . . . exposes him to the danger of a second prosecution for the same offense.'" *United States v. Redd*, 161 F.3d 793, 795 (4th

Cir. 1998)(quoting *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996). Defendant was not surprised at trial and interpreted the indictment language in the same manner as the jury instructions. In addition, he is in no danger of being retried for the same offenses. The Court notes that Defendant does not allege a constructive amendment of Counts 1 and 2 of the Superceding Indictment, although they follow the same construction as the challenged Count and received the same jury instruction: that the Defendant "intentionally touched the genitalia of" JD1 or JD2, "that is, his penis, not through the clothing, and with an intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of Paul Guild." *Id.* By Defendant's logic, a new trial would be necessary on these counts, for which he was acquitted, as well as for Count 8.

   Defendant also argues that the indictment was broadened by this Court's answer to a jury question. The jury asked the Court for "further explanation/definition of abuse and sexual gratification as used in the indictment." Trial Tr. vol. 7, 3-4, Jan. 30, 2008. "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-613 (1946). In its response, "the district court's duty is simply to respond to the jury's apparent source of confusion fairly and accurately without creating prejudice. The particular words chosen, like

11

the decision whether to issue any clarification at all, are left to the sound discretion of the district court." *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)(citing *United States v. United Medical and Surgical Supply Corp.*, 989 F.2d 1390, 1407 (4th Cir. 1993); *United States v. Horton*, 921 F.2d 540, 546 (4th Cir. 1990)).

Defendant argued that the Court should define "abuse" in accord with the description given in 18 U.S.C. § 3509. That statute addresses the rights of child victims or witnesses in court proceedings, and defines "sexual abuse" only "[f]or purposes of this section," without purporting to give a general definition or apply the term to any other contexts. 18 U.S.C. §3509(a). Rather than relying on a limited definition from another statutory context, the Court chose to use the common definition of "abuse," relying on its plain and ordinary meaning of "to treat in a harmful, injurious, or offensive way." Trial Tr. vol. 7, 10-11, Jan. 30, 2008. The Court declined to go beyond the clear language of the statute by adding the modifier "sexual" to the word "abuse," persuaded by the Prosecution's argument that "[t]he sexual component is the touching of the genitals." *Id.* at 9. The Court's use of a common definition in explaining the terms in the Superceding Indictment does not broaden its scope.

The Court finds that neither the jury instructions nor

12

the Court's answer to the jury question "change[d] the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." *Schnabel*, 939 F.2d at 203.  No separate offense was charged other than that in the Superceding Indictment.  Defendant suffered no prejudice as a result of the wording of the jury instructions or the Court's answer to the jury's question.  Therefore, the Court finds that there has been no constructive amendment or fatal variance to the Superceding Indictment.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Vacate Judgment and for a New Trial will be denied.

An appropriate ORDER will issue.


April 25, 2008                                   /s/
Alexandria, Virginia              James C. Cacheris
                         UNITED STATES DISTRICT COURT JUDGE